UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
M.E.S., INC., M.C.E.S., INC., GEORGE          :
MAKHOUL,                                       :
                                               :
                                               :          **MEMORANDUM AND ORDER**
                          Plaintiffs,          :          10-CV-02798 (PKC) (VMS)
                                               :
-against-                                      :
                                               :
SAFECO INSURANCE COMPANY OF                    :
AMERICA, HIRANI MES JV, S.A.                   :
COMUNALE CO. INC., LIBERTY MUTUAL              :
INSURANCE COMPANY, RONALD                      :
GOETSCH, DAVID PIKULIN, CARYN                  :
MOHAN-MAXFIELD,                                :
                                               :
                          Defendants.          :
-------------------------------------------------------- x

**Scanlon, Vera M., United States Magistrate Judge:**

Defendant Safeco ("Safeco") makes this motion pursuant to Rule 54(b) of the Federal

Rules of Civil Procedure ("FRCP"), and Local Civil Rule 6.4, asking the Court to reconsider its

January 6, 2014 Memorandum and Order (the "January 6 Order") granting Plaintiff MES's

motion to amend its complaint.[1] Docket No. 118. FRCP 54(b) provides that the court are

permitted "at any time before the entry of judgment adjudicating all the claims and rights and

liabilities of all the parties," to revise "any order or other form of decision." Fed. R. Civ. P.

54(b). Local Civil Rule 6.3 sets forth this District's procedural rules with respect to

reconsideration motions.[2] Local Civ. Rule 6.3.

---

[1] Safeco filed a fifty-page memorandum of law in support of its motion, which is twice the page limit allowed by my Individual Rules. Later, Safeco filed a twenty-eight page reply in support of its motion, which is nearly three times the page limit allowed by my Individual Rules. The Parties must comply with the Individual Rules or risk sanctions.

[2] Among other things, Local Civil Rule 6.3 provides that "[n]o oral argument shall be heard" on a reconsideration motion "unless the Court directs that the matter shall be reargued orally." Local

## I. Factual Background

I presume the Parties' familiarity both with the facts of this case and the January 6 Order. By way of a brief introduction, this case deals with three bonded construction projects for the government. As to two of these projects, called the Pyro Project and the ERDLF Project, MES alone contracted with the United States Army Corps of Engineers ("COE") to do the work. As to the third project, called the HEPFF Project, MES, together with another corporation called Hirani Engineering, contracted with the COE to do the work.

The COE found MES to be in default on all three projects, requiring Safeco, MES's surety, to pay the COE on the bonds. In some circumstances, Safeco negotiated with the COE to complete the defaulted projects and did, in fact, spearhead project completion. Safeco alleges that MES must now indemnify Safeco for the bond payments and for completion costs, and is suing MES for, among other things, payment and costs. See Safeco v. MES, No. 09 Civ. 3312 (PKC) (VMS) (E.D.N.Y.). MES alleges that Safeco's negotiation with the COE to complete the projects before MES could cure the default was wrong, and that Safeco hired unreasonably priced contractors to do the completion work. Accordingly, MES believes that it should not have to pay Safeco. Finally, in another related case, MES alleges essentially that Safeco's legal counsel Watt, Tieder, Hoffar & Fitzgerald, LLP ("WTHF") tricked MES into thinking that WTHF was representing both Safeco's and MES's interests during Safeco's negotiations with the COE, and that WTHF therefore committed legal malpractice because MES relied on WTHF to its detriment. See Makhoul v. WTHF, No. 11 Civ. 5108 (PKC) (VMS) (E.D.N.Y.).

I **grant in part** and **deny in part** Safeco's motion. I **grant** it to the extent that the January 6 Order's FRCP 15(a)(1) holding granting MES leave to file its Second Amended

---

Civ. Rule 6.3. This Court denies Safeco's request for oral argument on its reconsideration motion.

Complaint as of right is vacated.  I **deny** it insofar as I find the January 6 Order permitting amendment in the interest of justice under FRCP 15(a)(2) stands.

## II.  Legal Standards

### a.  Legal Standard For Reconsideration

A motion for reconsideration is the proper vehicle for bringing to the Court's attention matters it may have overlooked in its initial ruling or order.  See Local Civ. Rule 6.3.  The grounds for reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992).  "The standard for granting [a reconsideration motion] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir.1995) (citations omitted).  "It is well-settled that [a motion for reconsideration] is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple."  Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir.), as amended (July 13, 2012) (quotation marks omitted).  Furthermore, arguments raised for the first time on reconsideration are not proper grounds for reconsideration.  See Image Processing Techs., LLC v. Canon Inc., No. 10 Civ. 3867 (SJF) (ETB), 2012 WL 253097, at *1 (E.D.N.Y. Jan. 26, 2012) ("[A] party is not permitted to 'advance new facts, issues or arguments not previously presented to the Court' on a motion for reconsideration.") (citing Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp., 948 F.2d 111, 115 (2d Cir.1991)).  "[A] party requesting [reconsideration] is not supposed to treat the court's initial decision as the opening of a dialogue

in which that party may then use Rule [6.3] to advance new facts and theories in response to the court's rulings." Church of Scientology Int'l v. Time Warner, Inc., No . 92 Civ. 3024 (PKL), 1997 WL 538912, at *2 (S.D.N.Y. Aug. 27, 1997). "'The purpose of the rule is to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" Woodard v. Hardenfelder, 845 F. Supp. 960, 966 (E.D.N.Y. 1994) (quoting McMahan & Co. v. Donaldson, Lufkin & Jenrette, 727 F. Supp. 833, 833 (S.D.N.Y.1989)).

### b. Legal Standard For Complaint Amendment

The Federal Rules of Civil Procedure state that "[t]he court should freely give leave [for complaint amendment] when justice so requires. Fed. R. Civ. P. 15(a)(2). "This permissive standard is consistent with our strong preference for resolving disputes on the merits." Williams v. Citigroup, Inc., 659 F.3d 208, 212-13 (2d Cir. 2011).

The Second Circuit applies a "permissive standard" to complaint amendments. "[J]ustice does so require unless the plaintiff is guilty of undue delay or bad faith or unless permission to amend would unduly prejudice the opposing party." S.S. Silberblatt, Inc. v. East Harlem Pilot Block—Building 1 Housing Dev. Fund Co., Inc., 608 F.2d 28, ,42 (2d Cir. 1979). However, futility of amendment will serve to prevent a complaint amendment. See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002).

### III. Discussion

### a. MES Is Not Permitted To File The Second Amended Complaint As Of Right

Because I referenced the Original Complaint and not the First Amended Complaint, the January 6 Order held that FRCP 15(a)(1) permitted MES to file the Second Amended Complaint as of right. Docket No. 110. The First Amended Complaint was the operative pleading at the

time of the proposed amendment.  See Dluhos v. Floating & Abandoned Vessel Known as "New York", 162 F.3d 63, 68 (2d Cir. 1998) ("[I]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.").  FRCP 15(a)(1) provides that "[a] party may amend its pleading once as a matter of course."  Fed. R. Civ. P. 15(a)(1).  In light of the fact that MES has already amended its complaint once with the First Amended Complaint, FRCP 15(a)(1) does not apply.  Docket No. 22 (First Amended Complaint).  Section II.a. of the January 6 Order incorrectly permitted an amendment as of right and is vacated on reconsideration.

### b.  Safeco Suffers No "Undue Prejudice" Under FRCP 15(a)(2) That Requires Denying MES Leave To File The Second Amended Complaint

This vacatur of Section II.a. of the January 6 Order does not mean that MES does not have leave to file the Second Amended Complaint, because the January 6 Order found in the alternative that "justice require[d]" granting MES leave to amend.  Docket No. 110.  FRCP 15(a)(2) provides that in cases where a party cannot amend its pleading as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  FRCP 15(a)(2).  The Second Circuit applies a "permissive standard" to complaint amendments, and "justice does so require unless the plaintiff is guilty of undue delay or bad faith or unless permission to amend would unduly prejudice the opposing party."  S.S. Silberblatt, Inc. v. East Harlem Pilot Block—Building 1 Housing Dev. Fund Co., Inc., 608 F.2d 28, 42 (2d Cir. 1979); see Dougherty v. Town of North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002).

I find that permitting the Second Amended Complaint would not inflict prejudice on Safeco, for there will be no great delay to the resolution of this dispute or the expenditure of significant additional resources to conduct discovery and prepare for trial.  See Woodward v.

N.Y. Health & Hospitals, Corp., 554 F. Supp. 2d 329, 351 (E.D.N.Y. 2008) (stating that delay and expenditure of additional resources are important factors to a prejudice inquiry).

The Second Amended Complaint was filed in 2009, Docket No. 22, and MES filed to amend it in 2013, Docket No. 109-1. As stated in the January 6 Order, while it was true that the Second Amended Complaint came years after the filing of the last complaint, "[d]elay in seeking leave to amend a pleading is generally not, in and of itself, a reason to deny a motion to amend." Docket No. 110 (citing New Hampshire Ins. Co. v. Total Tool Supply, Inc., 621 F. Supp. 2d 121, 123 (S.D.N.Y. 2009)). Indeed, in the instant case, I find that the delay alone between the filing of the First Amended Complaint and the filing of the Second Amended Complaint does not justify denying the complaint amendments because MES's Second Amended Complaint mostly elaborates upon MES's First Amended Complaint. It is common for a party to refine its litigation theory through the benefit of discovery, and as Safeco itself points out in its reconsideration motion, there has been significant discovery in this case. See Safeco, No. 09 Civ. 3312; Makhoul, No. 11 Civ. 5108.

To be sure, there are certain claims and Defendants in the Second Amended Complaint that were not in the Original Complaint or the First Amended Complaint, i.e., Fraud in the Inducement, against Safeco; Fraudulent Misrepresentation and Concealment, against Safeco, Ms. Mohan-Maxfield, and Mr. Pikulin; and Civil Conspiracy to Defraud, against Safeco, Ms. Mohan-Maxfield, Mr. Pikulin and Mr. Goetsch. Docket No. 109-1 ¶¶ 295-321 (Ms. Mohan-Maxfield, Mr. Pikulin and Mr. Goetsch are the new Defendants in the Second Amended Complaint). However, these claims are premised on allegations that the Parties have discussed in the related case Makhoul, No. 11 Civ. 5108, in which MES claims that Safeco and its counsel WTHF tricked MES into believing that WTHF was representing both Safeco's and MES's interests

before the COE. Accordingly, despite the passage of time before the filing of the Second Amended Complaint, I find that the Second Amended Complaint would not much delay the Parties' preparation for trial in this action. Safeco cannot claim to be surprised by these new claims and unprepared to swiftly formulate a defense. After all, the issue has been discussed in the context of <u>Makhoul v. WTHF</u>, No. 11 Civ. 5108, where Safeco has already developed a strategy and collected discovery, and it has been plain in that case that the MES allegations implicated Safeco employees as well.

Safeco also alleges that paper discovery in this action is all but complete such that the Second Amended Complaint unfairly reopens discovery and requires a great deal of additional expenditures on document production just when Safeco thought that discovery had finished up. The continuation of discovery is not a sufficient prejudice to Safeco to justify denying MES's claims.

First, I am familiar with the paper discovery in <u>Safeco</u>, No. 09 Civ. 3312, and <u>Makhoul</u>, No. 11 Civ. 5108, which has been extensive (despite MES's own dilatory productions). I fail to see how the new claims and Defendants in this action necessitate very much more paper discovery. Discovery in <u>Safeco</u>, No. 09 Civ. 3312, and <u>Makhoul</u>, No. 11 Civ. 5108, has been produced touching on the issues in the amendments. The new claims and Defendants in the Second Amended Complaint are likely only to require limited supplemental discovery.

Second, to the extent that there will need to be supplemental paper discovery for these new claims and Defendants at all, it is simply not correct that that would require reopening paper discovery, or even extending paper discovery that is close to being finished. As recently as March 3, 2014, Safeco was still disputing MES's interrogatory responses; MES was disputing Safeco's interrogatory responses; Safeco was disputing the adequacy of MES's privilege log; and

MES was disputing the completeness of Safeco's document production relating to its privilege log. Safeco, No. 09 Civ. 3312, Docket No. 291. The resolution of all of these issues already will likely require more paper discovery. An order for a scheduling conference will be entered with this order to ensure discovery continues apace.

### c. MES's Count Nine Sets Forth Allegations Supporting A Miller Act Claim Against Safeco

Safeco asks that I reconsider my futility analysis relative to Count Nine of the Second Amended Complaint, which alleges a Miller Act claim against Safeco. Docket No. 109-1 ¶¶ 289-294. In particular, Safeco argues that the law disallows a partner or a joint venture in the general contract from Miller Act protection, and also points out that MES's Second Amended Complaint alleges that MES was a partner or joint venturer to the general contract through HMES. Docket No. 118-1. In the January 6 Order, I found that the Second Amended Complaint did not plead all the facts to demonstrate that MES was a joint venturer (despite the document's conclusory statement that, at least with respect to one of the projects, there was a joint venture) such that MES's Miller Act claim was futile based on the pleadings. Docket No. 110.

Moreover, in order to make out a Miller Act claim and avoid a futility finding, MES need only plead that: "(1) it provided labor or materials in performing work provided for in a contract for which a payment bond is furnished and (2) it has not been paid in full for the work performed." Empire Enter. JKB, Inc. v. Union City Contractors, Inc., 660 F. Supp. 2d 492, 507 (W.D.N.Y. 2009) (citing U.S. ex rel. Susi Contracting Co. v. Zara Contracting Co., 146 F.2d 606, 612 (2d Cir. 1944)). In other words, MES does not have to plead that it is not a joint venturer to make out a Miller Act claim at this stage. Rather, a Miller Act claimant's joint venturer status is treated as a defense more properly considered at summary judgment or trial. See U.S. ex rel. Cortez III Serv. Corp. v. PMR Const. Servs., Inc., No. 00 Civ. 133 (JEC) (LAM)

(D.N.M.), Docket No. 102 (describing in the pretrial order that among the defendant's defenses was the fact that the plaintiff was a joint venture for the purposes of the contract), rev'd, 117 F. App'x 661, 662 (10th Cir. Dec. 3, 2004) (reversing the district court's rejection of the surety's "joint venture defense" to a Miller Act claim during a bench trial without hearing both sides' arguments and evidence on the issue); Nat'l Union Fire. Ins. Co. of Pittsburgh, Penn. v. Elec. Transit Inc., No. 04 Civ. 3435 (JSW), 2007 WL 1624539, at *2 (N.D. Cal. June 4, 2007) (discussing the circumstances under which a joint venturer may be precluded from claiming under a surety bond, and stating that case law "made no distinction between joint venturers and the general 'insider' defense"); U.S. for Use of Altman v. Young Lumber Co., 376 F. Supp. 1290, 1296 n.4 (D.S.C. 1974) (deferring on the question of whether the joint venturer defense to a Miller Act claim must be raised in pleadings, but ruling that the joint venturer defense would be heard on the merits at trial).  It would be premature for the Court to deny the pleading amendment based on a defense.  See, e.g., Hildene Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc., No. 11 Civ. 5831 (AJN), 2012 WL 3542196, at *9 (S.D.N.Y. Aug. 15, 2012) (stating that "courts in the Second Circuit have refused to apply the economic interest defense at the pleading stage to dismiss complaints for tortious interference with contract"); Reach Music Pub, Inc. v. Warner/Chappell Music, Inc., No. 09 Civ. 5580 (LTS) (GWG), 2011 WL 3962515, at *6 (S.D.N.Y. Sept. 7, 2011) ("Matters extraneous to the pleadings are generally inappropriate for consideration on a motion to dismiss claim."); Levy v. Bessemer Trust Co., No. 97 Civ. 1785 (JFK), 1997 WL 431079, at *3 (S.D.N.Y. July 30, 1997) ("Defendant's argument is a defense, not an argument as to the sufficiency of the pleadings.").

Indeed, Safeco only cites to cases in support of their argument in which the courts ruled on summary judgment that an individual principal or joint-venture member may not bring a

Miller Act claim against the surety on the principal's own payment bond.  Docket 64 (citing U.S. ex rel. Johnson Pugh Mech., Inc. v. Landmark Const. Corp., 318 F. Supp. 2d 1057 (D. Colo. 2004) (considering the issue on summary judgment); U.S. ex rel. PCC Const., Inc. v. Star Ins. Co., 90 F. Supp. 2d 512 (D.N.J. 2000) (considering the issue on summary judgment)).  Safeco does not provide the Court with cases in which a Miller Act claim was deemed futile on a complaint amendment motion, or dismissed on a FRCP 12 motion, at the pleading stage.  The amendment is not futile at this stage.

> **d.  MES's Count Ten Sets Forth Allegations Supporting A Fraud-In-The-Inducement Claim Against Safeco**

Safeco also asks that I reconsider my decision to grant leave to MES to file Count Ten of the Second Amended Complaint, which alleges Fraud in the Inducement against Safeco.  Docket No. 109-1 ¶¶ 295-301.  First, Safeco claims that I mistakenly considered an allegation in my analysis that I should not have considered because of a previous ruling by the Court in related case Safeco, No. 09 Civ. 3312.  The disputed allegation is that Safeco orally promised MES that "MES had the right to appeal any contract termination before Safeco could assume control over the Pyro Project" (hereinafter "Safeco's alleged oral promise that MES would have the right to appeal").  Docket No. 118-1 (citing Docket No. 110 at 2, 4, 6, 8).

The relevant previous ruling was issued by District Judge Ross in her May 19, 2010 Opinion and Order in related case Safeco, No. 9 Civ. 3312, in which District Judge Ross held that "the parol evidence rule bars admission of the alleged oral agreement [regarding Safeco's alleged oral promise that MES would have the right to appeal] to modify the terms of the written indemnity agreements."  Safeco, No. 09 Civ. 3312, Docket No. 80 at 17.

Safeco's argument appears to invoke "law of the case" doctrine relative to District Judge Ross's ruling in Safeco, No. 9 Civ. 3312, but that is a different, albeit related, case.  Law-of-the-

case doctrine, generally speaking, "posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the <u>same</u> case." <u>Aramony v. United Way</u>, 254 F.3d 403, 410 (2d Cir. 2001) (emphasis added). However, "[t]he doctrine is broad enough 'to encompass a lower court's adherence to . . . the rulings of another judge or court in . . . a closely related case.'" <u>Brown v. N.Y.</u>, 975 F. Supp. 2d 209, 220 (N.D.N.Y. 2013) (citing <u>Ovadia v. Top Ten Jewelry Corp.</u>, No. 04 Civ. 2690 (JMH) (HD), 2005 WL 1949970, at *1 (S.D.N.Y. Aug. 12, 2005)).

In the January 6 Order, however, I found moot the question of whether District Judge Ross's parol-evidence ruling in <u>Safeco</u>, No. 09 Civ. 3312, could be read to foreclose Safeco's oral promise from being considered a contract term in this action. That is because MES is not, in its Second Amended Complaint, referring to Safeco's alleged oral promise as the foundation of a breach-of-contract claim, but rather as the foundation of a different claim, a fraud-in-the-inducement claim. <u>See</u> <u>Docket No. 109-2</u> at 9-10 (MES accepting for the purposes of this motion that District Judge Ross's ruling in <u>Safeco</u>, No. 09 Civ. 3312, about the parol evidence rule rendering Safeco's alleged oral promise inadmissible on a breach-of-contract claim governs here); <u>Docket No. 109-5</u> at 8 (same); <u>Docket No. 134</u> at 16 (same).

The problem with Safeco's law-of-the-case argument, in addition to its failure to brief the question of whether the instant action is sufficiently "closely related" to <u>Safeco</u>, No. 09 Civ. 3312, is that District Judge Ross's ruling that Safeco's alleged oral promise is not a term to the indemnity agreements is not the same as the true question at issue with Count Ten, which is whether Safeco's alleged oral promise can constitute fraud in the inducement. In my January 6 Order, I found that Count Ten of the Second Amended Complaint plainly discusses Safeco's

alleged oral promise not as a contract term but as a fraudulent inducement.[3] Docket No. 110.

Safeco complains that in granting MES leave to file the fraud-in-the-inducement claim to proceed, I misapplied Telecom Int'l Am., Ltd. v. AT&T Corp., 280 F.3d 175, 196 (2d Cir. 2001), because I did not agree with Safeco and hold that Telecom required Count Ten to fall because it was nothing more than "simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligation thereunder, is insufficient to state an independent tort claim." Docket No. 118-1; Docket No. 135 (pointing out that the Second Amended Complaint repeatedly refers to the word "agree" such that MES must be pleading a contract claim). First, I believe that Safeco's argument runs afoul of the rule that a motion for reconsideration "is not a vehicle for . . . securing a rehearing," because Safeco made this argument in its original opposition to MES's motion to amend its complaint. Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir.), as amended (July 13, 2012) (quotation marks omitted); Docket No. 109-3 at 13-16. As held in the January 6 Order, MES's Fraud in the Inducement Claim falls within an exception to Telecom that applies when the fraud claim involves "a fraudulent representation collateral or extraneous

_____

[3] The January 6 Order discussed MES's breach-of-contract claim against Safeco, pleaded in Count One of the Second Amended Complaint, as problematic insofar as it partially relied upon Safeco's alleged oral promise. Docket No. 110 (citing Docket No. 109-1 ¶ 244(a)). I observed that MES could not bring both a breach-of-contract claim and a fraud claim on the same allegation of Safeco's alleged oral promise, and so in light of MES's representation that it wished to bring a fraud claim, I "deemed withdrawn" MES's allegation relating to Safeco's alleged oral promise as a grounds for breach of contract. Docket No. 110 at 25. Safeco complains that when MES subsequently filed its Second Amended Complaint, it included that allegation in Count One. Docket No. 111 ¶ 244(a). MES responded in filing with the Court that it understands that the allegation as it pertains to a breach-of-contract claim is inoperative and that the failure to delete it was not meant to dupe the Court or Safeco. Docket No. 134 at 15 (MES conceding that "it was well within the court's power to interpret the proposed pleading in this way, because . . . it is required to make all reasonable inferences in favor of the plaintiff").

to the contract."[4]  Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996).

Relatedly, Safeco asks me to reconsider my ruling that MES pleaded the facts relating to fraud with sufficient particularity, specifically because the alleged fraudulent misrepresentation of a material fact is promissory in nature, and a fraud claim must allege "a representation of a present fact, not of future intent."  Docket No. 110 (citing Deerfield Comm'ns Corp. v. Chesebrough-Ponds, Inc., 68 N.Y.2d 954, 956 (1986), and explaining that "the alleged inducement can only be said to have induced entry into the contract but cannot be said to have simultaneously become a contract term"); Docket No. 118-1 at 29; Docket No. 135.  Safeco cites to Grappo v. Alitalia Linee Aeree Italiane, S.p.A., 56 F.3d 427, 433 (2d Cir. 1995), in further support of its position, in which the Second Circuit held that under New York law, "a cause of action for fraud does not generally lie where the plaintiff alleges only that the defendant entered into a contract with no intention of performing it . . . [rather] the plaintiff [must] allege that the defendant engaged in other fraudulent conduct besides entering the contract with no intention to perform."

Just five weeks after the Second Circuit issued Grappo, the New York Court of Appeals decided Graubard Mollen Dannett & Horowitz v. Moskovitz, 86 N.Y.2d 112, 118 (1995), stating that "a cause of action for fraud [is] stated by alleging that a promisor, at the time of making certain representations, lacked any intention to perform them."  Id. (citing Sabo v. Delman, 164 N.Y.S. 2d 714, 716 (1957)); see PK Finans Intern. Corp. v. IBJ Schroeder Leasing Corp., No. 96 Civ. 1816 (SAS), 1996 WL 363138, at *4 (S.D.N.Y. June 28, 1996) (citing Graubard and stating

_____

[4] Despite Safeco's repetition of its original Telecom argument on reconsideration, Safeco does not build upon it by addressing whether MES's fraud-in-the-inducement claim falls within the collateral-or-extraneous exception to Telecom that I found applicable in the January 6 Order. Docket No. 110 at 23-24.

that as a result, "[t]he Grappo line of cases . . . must be deemed not to represent current New York law.").

Courts have addressed how to handle the "apparent tension" between the rule that a contract action cannot be converted to one for fraud, see, e.g., Grappo, 56 F.3d at 433, and the rule that "if a promise was made with a preconceived and undisclosed intention of not performing it, it constitutes a misrepresentation of a material existing fact," see, e.g., Sabo, 164 N.Y.S. 2d at 716; Int'l CableTel Inc. v. Le Groupe Videotron Ltee, 978 F. Supp. 483, 487 (S.D.N.Y. 1997) (Sotomayor, D.J.). In International CableTel Inc. v. Le Groupe Videotron Ltee, 978 F. Supp. 483, 487 (S.D.N.Y. 1997), the court held that the tension "has been reconciled through a rule, widely adopted by the state and federal courts, pursuant to which a false promise can support a claim of fraud only where that promise was 'collateral or extraneous' to the terms [of] an enforceable agreement in place between the parties." Id. (citing Deerfield Comm'ns Corp., 68 N.Y.2d at 956); see OHM Remediation Servs. Corp. v. Hughes Envtl. Sys., Inc., 952 F. Supp. 120, 123 (N.D.N.Y. 1997) ("[I]f the fraud claim is based on an agreement not integrated into the contract at issue, such as a collateral oral agreement, the plaintiff may maintain a claim for fraud simultaneously with the breach of contract claim."); Graal Enter. Ltd. v. Desourdy Intern'l 1949 Inc., 1996 WL 353003, at *4 (S.D.N.Y. June 26, 1996) ("If, collateral or extraneous to the contract, a promise was made with a preconceived and undisclosed intention of not performing that promise, the intent to breach that promise can be a misrepresentation of material fact upon which an action for damages or rescission may be based."). Again, as before, Safeco has argued to this Court that Safeco's alleged oral promise that MES would have the right to appeal is not a contract term, i.e., that it is extraneous to the contract, and MES's Count Ten is

not futile as pleaded.[5]

Finally, Safeco argues that I should reconsider whether Count Ten sets forth sufficient facts to support a claim because, according to Safeco, the claim is time-barred. Safeco says that I overlooked Second Circuit precedent stating that "[w]here the amended complaint does not allege a new claim but renders prior allegations more definite and precise, relation back occurs." Slayton v. Am. Exp. Co., 460 F.3d 215, 228 (2d Cir. 2006) (citing Stevelman v. Alias Research, Inc., 174 F.3d 79, 87 (2d Cir. 1999) ("Where no new cause of action is alleged, as here, this Court liberally grants relation back under [FRCP] 15(c).")). That is indeed one sentence from that case, and in it, Slayton was offering an example of a scenario where relation back of an amended claim is permissible. A closer look shows that FRCP 15(c)(2) provides a broad relation-back rule, which is that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). That certainly describes what is happening here: the fraudulent-inducement claim in Count Ten "arose out of the conduct . . . set forth or attempted to be set forth in the original pleading." Id. "The purpose of Rule 15 is to provide maximum

---

[5] The question of the collateral-promise rule was handled only in passing in Safeco's original papers, and not briefed in Safeco's reconsideration motion. Docket No. 118-1. This is another reason to reject the reconsideration request.

It should be noted that, in the event that Safeco files a motion to dismiss, that the Parties might consider addressing the significance, if any, of District Judge Ross's ruling, made pursuant to Safeco's partial summary judgment motion relating to collateral security in related case Safeco, No. 09 Civ. 3312, that "defendants cannot use the oral term to claim that they were fraudulently induced to enter into the Indemnity Agreements," Docket No. 80 at 17 n.5. The Parties have not briefed this issue in the context of the motion to amend the complaint or on reconsideration and, as the Court explains above, the law-of-the-case doctrine does not always apply between two separate cases.

opportunity for each claim to be decided on its merits rather than on procedural technicalities."
Slayton, 460 F.3d at 228. As I said in my January 6 Order, "the central inquiry is whether
adequate notice of the matters raised in the amended pleading has been given to the opposing
party within the statute of limitations by the general fact situation alleged in the original
pleading." Id. (citing Stevelman, 174 F.3d at 86 (quotation marks & citation omitted)). The
issues of who said what in the relevant pre-contract discussion among the Parties and whether
the original and new claims are sufficiently related are better dealt with after discovery.[6] See
Wilson v. Fairchild Republic Co., Inc., 143 F.3d 733, 738 (2d Cir. 1998) (Whether a new claim
in amended pleading relates back to an original complaint "lies in the district court's discretion . .
. and it is for abuse of that discretion that we review the district court's decision.").

> ### e. MES's Count Eleven Sets Forth Sufficient Allegations To Support A Fraudulent Misrepresentation Or Concealment Claim Against Safeco, Ms. Mohan-Maxfield And Mr. Pikulin

Safeco argues for reconsideration of my decision to allow MES to include Count
Eleven's Fraudulent Misrepresentation or Concealment claim in the Second Amended
Complaint. Safeco complains that the January 6 Order "failed to identify a single instance in
which Count Eleven alleges a specific misrepresentation of material fact." Docket No 118-1 at
31-35. To the contrary, the January 6 Order cited directly to the Second Amended Complaint for
the allegation that Ms. Mohan Maxfield "argued [to MES] that MES should allow itself to be
represented by WTHF in all dealings with the COE going forward," Docket No. 109-1 ¶ 37; and
that Mr. Pikulin "asked Makhoul and Hirani to allow [WTHF attorney] Brasco to continue to
represent HMES's interests in dealing with the [COE] at the Cure Notice meeting," id. ¶ 115.

---

[6] I again note that Safeco has essentially repeated an argument that it made in its original papers and which I discussed and rejected in the January 6 Order, without briefing the matter any further, either with novel argument or citation to additional case law, to demonstrate what exactly it believes was overlooked the first time around.

Docket No. 110.

Safeco argues that the above-cited misrepresentations cannot serve as the grounds for a fraud claim because each one contains a word that rendered its sentiment nonfactual and future-oriented. For example, Safeco points out that Ms. Mohan-Maxfield "argued" to MES that WTHF would represent it before the COE and that WTHF should allow that representation, and that Mr. Pikulin "asked" MES to allow WTHF to continue to represent its interests before the COE. Docket No. 118-1. Safeco's argument, taken to its logical conclusion, would require Ms. Mohan-Maxfield and Mr. Pikulin to have instead said to MES in the present tense that "WTHF represents your interests before the COE," which of course would not have been true because according to the allegation Ms. Mohan-Maxfield and Mr. Pikulin were trying to make a fraudulent misrepresentation that would induce MES to rely upon WTHF to represent MES's interests before the COE at the time.[7]

Safeco complains that this is precisely its point, i.e., that Ms. Mohan-Maxfield's and Mr. Pikulin's misrepresentations did not involve any "present and existing fact," which according to Safeco is a sine qua non of any fraud-based claim. Docket No. 118-1. But the key "present and

---

[7] Safeco's complaint about the lack of any alleged misrepresentations to support Count Eleven is also without foundation, as the Second Amended Complaint contains other alleged misrepresentations. For example, the Second Amended Complaint alleges that Ms. Mohan-Maxfield, at various meetings, "represented to MES that [WTHF] attorneys . . . would represent and protect the interests of MES against the [COE], and give Safeco and MES legal advice on how to proceed against the [COE]." Id. ¶ 304. At meetings and in conference calls, "[Mr.] Pikulin represented directly to Makhoul that attorneys from the firm of WTHF would represent and protect the interests of MES and the [COE]." Id. ¶ 305. These alleged misrepresentations do not contain the words "argue" or "ask" that Safeco found problematic, and MES further clarifies that "[t]hese representations were false when made because Safeco, [Ms.] Mohan-Maxfield and [Mr.] Pikulin convinced [MES] to rely on WTHF to protect MES's interests, only to have WTHF control MES so that it did not pursue a course of action that Safeco perceived to be contrary to its interests." Id. ¶ 307. The Second Amended Complaint then goes on to offer even more detail. All told, I find that the Second Amended Complaint alleges specific misrepresentations of material fact; therefore, MES has pleaded sufficient facts in support of Count Eleven.

existing fact" was WTHF's proffered willingness to represent both Safeco and MES before the COE.

Safeco further complains that this Court improperly reached this conclusion by drawing an inference from Ms. Mohan-Maxfield's and Mr. Pikulin's statements that WTHF was willing to, or actually was, representing MES before the COE.  Id. at 32 ("That the [January 6] Order must resort to implying the existence of a misrepresentation of fact is indicative of MES's failure to plead one.").  Safeco specifically states that the following language from the January 6 Order proves that I did not hold MES to its Rule 9(b) pleading burden relating to whether Ms. Mohan-Maxfield and Mr. Pikulin made a misrepresentation of fact, by inferring that a misrepresentation had been made: "It is plain that the reasonable implication of [Ms.] Mohan-Maxfield's and [Mr.] Pikulin's allegedly urging [MES] to retain WTHF as their counsel is that WTHF would . . . advocate for MES, and [MES] allege[s] that they relied on those statements to their detriment." Id. (citing Docket No. 110 at 26).

First, courts reviewing the sufficiency of a complaint "take all factual allegations as true and draw all reasonable inferences in the plaintiff's favor."  Nakahata v. New York Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 196 (2d Cir. 2013).  This is equally true in the context of fraud-claim allegations which are subject to FRCP 9(b) pleading requirements.  See McIntire v. China MediaExpress Holdings, Inc., 927 F. Supp. 2d 105, 125 (S.D.N.Y. 2013) ("Accepting all well-pleaded assertions of fact in the Amended Complaint as true, and drawing all reasonable inferences and resolving all doubts in favor of the [plaintiff], the [c]ourt concludes that, under the standards of Rule 9(b) and the PSLRA, [the plaintiffs] have adequately pled that [the defendant] made false or misleading statements . . . .") (citations omitted); Marshall v. I-Flow, LLC, No. 12 Civ. 721 (TJM), 2012 WL 3241237, at *4 (N.D.N.Y. Aug. 7, 2012) ("Accepting the allegations

in the Complaint as true and drawing all reasonable inferences in favor of [the plaintiff], the

[c]ourt finds that the [c]omplaint adequately meets Rule 9(b)'s particularity requirements.");

Gaymar Indus. Inc. v. Cincinnati Sub-Zero Prod., Inc., No. 08 Civ. 299S (WMS), 2012 WL

176500, at *7 (W.D.N.Y. Jan. 2012) ("[The] pleadings permit a reasonable inference of

deceptive intent, thus clearing the Rule 9(b) hurdle.").

At least one district court has discussed whether the reasonable-inference standard should

have a place in the review of fraud claims given that FRCP 9(b) demands particularity.[8]  In JP

Morgan Chase Bank v. Winnick, 406 F. Supp. 2d 247, 251 (S.D.N.Y. 2005), the court addressed

a defendant's argument that on a motion to dismiss a fraud the plaintiff is not entitled to the

reasonable-inference standard relating to the scienter element.  The Winnick court stated that the

Second Circuit

> has not addressed itself to what, if any, impact . . . Rule 9(b) ha[s]
> on the inferences permissible on a motion to dismiss.  But this
> [c]ourt can detect no move away from permitting fraud plaintiffs
> all reasonable inferences.  The Court of Appeals continues to recite
> and rely on this standard, including in cases discussing the
> intersection of Rule 9(b) . . . pleading requirements.  The [c]ourt
> finds no contradiction between permitting all reasonable inferences
> to be drawn in favor of the plaintiff, and yet requiring that these
> inferences of scienter be sufficiently strong to satisfy Rule 9(b).
> Accordingly, this [c]ourt will rely on the . . . standard and the
> inferences it permits in deciding this motion.

Winnick, 406 F. Supp. 2d at 252 n.2; see Nakahata v. New York Presbyterian Healthcare Sys.,

Inc., 723 F.3d 192, 197 (2d Cir. 2013) (reciting the reasonable-inference standard in a fraud case

requiring Rule 9(b) pleading); Kleinman v. Elan Corp., plc, 706 F.3d 145, 152 (2d Cir. 2013)

(same); Wilson v. Merrill Lynch & Co., Inc., 671 F.3d 120, 128 (2d Cir. 2011) (same).  I find

---

[8] Safeco has not specifically couched its protest in these terms, much less provided the Court
with relevant legal citation, but I believe this could be Safeco's intended point when it complains
about my use of an inference or implication.

Winnick, and the fact that the Second Circuit continues to cite the reasonable-inference standard in decisions relating to dispositive pleading motions in FRCP 9(b) fraud cases, to support the challenged use of the phrase "reasonable implication" in the January 6 Order.

Second, Safeco seizes upon one comment about the Second Amended Complaint but ignores that the pleading includes numerous other allegations about Ms. Mohan-Maxfield's and Mr. Pikulin's misrepresentations that need no inference to be understood. For example, MES alleges in its Second Amended Complaint that "[a]t each of the meetings with Safeco and conference calls concerning WTHF's role, [Ms.] Mohan-Maxfield represented to MES that attorneys from the firm of WTHF would represent and protect the interests of MES against the [COE]." Docket No. 111 ¶ 304. MES also alleges that "[Mr.] Pikulin represented directly to Makhoul that attorneys from the firm of WTHF would represent and protect the interests of MES against the [COE]." Id. ¶ 305. The Second Amended Complaint then completes the allegation a few lines later, saying that "[t]hese representations were false when made because Safeco, [Ms.] Mohan-Maxfield and [Mr.] Pikulin convinced [MES] to rely on WTHF to protect MES's interests, only to have WTHF control MES so that it did not pursue a course of action that Safeco perceived to be contrary to its interests." Id. ¶ 307. The Second Amended Complaint then goes on to explain at least four ways in which WTHF took actions detrimental to MES. Id. Read together, these are direct allegations of misrepresentations made by Ms. Mohan-Maxfield and Mr. Pikulin that require no reasonable inferences to understand.

Safeco also argues that leave to file Count Eleven should be denied because the Second Amended Complaint makes factual allegations that are contradictory to factual allegations in the First Amended Complaint such that the amendments should be viewed as made in bad faith and disallowed. Docket No. 118-1 (citing Reisner v. Gen. Motors Corp., 511 F. Supp. 1167

(S.D.N.Y. 1981)).  In <u>Reisner</u>, the court denied complaint amendment in part because the

movant's "shifting of legal theories and adding of inconsistent allegations" raised substantial

doubt as to good faith.  <u>Id.</u> at 1172 n.10.  In arguing that this same concern is raised here, Safeco

focuses on allegations from the First Amended Complaint which, according to Safeco,

demonstrates that Safeco and MES were constantly adversely interested, actively negotiating

against one another and consistently reserving their rights against each other.  <u>Docket No. 118-1</u>

(citing <u>Docket No. 22</u> ¶¶ 37-51).  Safeco's point is that it does not understand how MES can say

that Safeco and MES were constantly adversely interested in one breath, and then in the next,

allege that WTHF was presenting Safeco's and MES's interests alike against the COE.  For

example, the First Amended Complaint acknowledges that WTHF was "Safeco's consultant."

<u>Docket No. 22</u> ¶ 39.  I have read the cited paragraphs from the First Amended Complaint, and

they certainly reflect negotiation between Safeco and MES, which of course is adversarial by its

nature, but they also show some eventual agreement.  <u>Id.</u> ¶¶ 37-51.

I fail to see how MES's fraud-based claims relative to WTHF in the Second Amended

Complaint cannot possibly be squared with the allegations in the First Amended Complaint.

Safeco would prefer that the Second Amended Complaint not be permitted as being contrary to

common sense.  Safeco reasons that it does not make sense that MES knew that WTHF began as

Safeco's representative, yet could still claim to have thought it wise, however nicely Safeco's

representatives made the invitation, to rely upon Safeco's attorneys' services rather than secure a

lawyer of its own, particularly in a negotiation scenario where MES had a lot to lose.  But a

failure of common sense, by one Party's account, is not a reason to not permit an amendment

that is at least plausible.  As the adage goes, "[c]ommon sense is not so common."  John Bartlett,

Familiar Quotations 343:18 (15th ed. 1980) (citing to Voltaire's 1764 remark).[9]  A fact finder

can decide whether this is in fact what happened.

Safeco next argues that the Court's generous reading of the Second Amended Complaint

gave MES the benefit of unsupported and therefore impermissible inferences.  For example,

Safeco complains that I made one such unsupported inference in my description of the Second

Amended Complaint's treatment of the Parties' ERDLF Project dispute, when I wrote that while

MES "do[es] not make any explicit mention of WTHF's alleged representation of MES[,] . . . the

ERDLEF [Project] allegations criticize Safeco for acting in its own interest at a time when [Ms.]

Mohan-Maxfield had convinced MES that, through the offices of WTHF, Safeco and MES were

acting as a united front before the COE."  Docket No. 118-1 (citing Docket No. 110 at 12).

According to Safeco, my generous reading of these allegations permitted Count Eleven to

survive as to MES's ERDLF Project allegations, when it should have been dismissed for failure

to allege a fraudulent misrepresentation.  To begin, the language cited accurately reflects the

Second Amended Complaint's content.  The Second Amended Complaint explicitly alleges, in

its description of the Pyro Project dispute, that Safeco duped MES into relying upon WTHF to its

detriment.  It is also true that MES did not explicitly re-allege that Safeco duped MES into

relying upon WTHF to its detriment during the ERDLF Project dispute.  However, the Second

Amended Complaint hardly needed to make such an allegation, because it instead alleged that

MES remained convinced during the ERDLF Project dispute that it could continue to rely upon

---

[9] It is likely that the Court will very shortly be considering the question of whether WTHF and
MES had an attorney-client relationship on summary judgment in related case Makhoul, No. 11
Civ. 5108, where the Parties will soon file premotion conference letters for cross motions on
summary judgment.  Evidence that is relevant to the question of whether an attorney-client
relationship existed may be relevant to whether MES reasonably relied upon the alleged
misrepresentation here.  If it is held on summary judgment that there was no attorney-client
relationship between MES and WTHF, that decision may affect MES's fraud claims here.

WTHF:

> As a result of these fraudulent misrepresentations and concealment [MES was] injured because [it] did not use or get the benefit of independent and unbiased legal counsel during the negotiations with the [COE] before the HEPFF and ERDLF projects terminations and at the early stages of post terminations.

Docket No. 109-1 ¶ 316.  Affording these words their plain meaning, what else could they possibly mean other than that MES continued to rely on WTHF during the ERDLF Project dispute as a result of Safeco's fraudulent inducement?  Accordingly, I find Safeco's argument that I made an undue inference unavailing.  Count Eleven is therefore not futile as pleaded.

### f. MES's Count Twelve Sets Forth Sufficient Allegations To Support A Civil Conspiracy To Defraud Claim Against Safeco, Ms. Mohan-Maxfield, Mr. Pikulin and Mr. Goetsch

Count Twelve continues to build on the fraud allegations leveled in Counts Ten and Eleven, and alleges civil conspiracy to defraud.  Docket No. 109-1 ¶¶ 317-321.  The January 6 Order held that MES pleaded elements sufficient to satisfy the elements of a civil conspiracy to defraud, which are: (1) an agreement between two or more people; (2) an overt act committed in furtherance of the agreement; (3) the participation of the individuals in furtherance of the plan or purpose; (4) resulting in injury.  Docket No. 110 (citing Bigio v. Coca-Cola Co., 675 F.3d 163, 176 (2d Cir. 2012)).

Safeco argues that my decision was incorrect because MES did not plead the first element of a civil conspiracy, which is an agreement between Mr. Goetsch, Ms. Mohan-Maxfield and Mr. Pikulin.  Docket No. 118-1.  In finding that MES did sufficiently plead agreement, the January 6 Order cited to language from the Second Amended Complaint that said that "[Mr.] Goetsch agreed with the plan to induce [MES] to rely on the legal representation of WTHF and the representation of [Ms.] Mohan-Maxfield and [Mr.] Pikulin to that end . . ."  Docket No. 109-1 ¶

319. The allegation of Mr. Goetsch's agreement with a plan that Ms. Mohan-Maxfield and Mr. Pikulin would induce MES to rely on WTHF sufficiently implies that these three people had an agreement to undertake this program together.  See Starr v. Sony BMG Music Entm't, 592 F.3d 314, 329 (2d Cir. 2010) (J. Newman, concurring) (stating that allegations regarding conduct, "amplified by specific factual allegations making plausible an inference of agreement, suffices to render the allegation . . . sufficient to withstand a motion to dismiss"); Eaves v. Designs for Finance, Inc., 785 F. Supp. 2d 229, 257-58 (S.D.N.Y. 2011) (holding that the plaintiffs had sufficiently pleaded the agreement element to a conspiracy to defraud claim by alleging conduct implying the agreement) (citing First Fed. Sav. & Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co., 629 F. Supp. 427, 444 (S.D.N.Y. 1986), for the proposition that allegations of fraudulent misrepresentations and a business relationship with the party making those misrepresentations "constitute sufficient facts from which a trier of fact could infer an agreement"); but see Gorham-DiMaggio v. Countrywide Home Loans, Inc., 592 F. Supp. 2d 283, 299 (N.D.N.Y. 2008) (holding that conspiracy to defraud claim did not properly plead agreement or conduct that would support inference of such a plot); Ferguson v. Meridian Dist. Servs., Inc., 155 A.D.2d 642, 642 (2d Dep't 1989) (stating that the complaint, "contains no factual allegations from which it can be inferred that [one defendant] had agreed with the codefendants . . . to cooperate in a fraudulent scheme").[10]  Indeed, the next paragraph states that "[i]n furtherance of

---

[10] Safeco argues that Twombly does not permit such inference, but the Second Circuit has interpreted Twombly to say that "to be viable, a complaint must contain 'enough factual matter (taken as true) to suggest that an agreement . . . was made." In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).  Safeco further argues that the Second Amended Complaint did not plead Mr. Goetsch's agreement with sufficient specificity because the allegation is preceded by the phrase "[u]pon information and belief." Docket No. 118-1 (citing Docket No. 111 ¶ 319).  In Kershaw v. Nautica S.A. Ltd., 885 F. Supp. 617, 621 (S.D.N.Y. 1995), the court held that "[i]n general, Rule 9(b) pleadings can not be based on 'information and belief,'" and "each allegation made on information and belief must

this conspiracy," a clear allusion to the fact that the three agreed, "[Ms.] Mohan-Maxfield and [Mr.] Pikulin made the [fraudulent] representations previously alleged." Id. ¶ 320.

Safeco disagrees with my reading of Count Twelve, insisting that when a civil conspiracy is grounded in fraud, the allegations must comply with FRCP 9(b). I disagree with Safeco's position, for "[o]n its face, Rule 9(b) applies only to fraud or mistake, not to conspiracy. [A plaintiff's] pleading of a conspiracy, apart from the underlying acts of fraud, is properly measured under the more liberal pleading requirements of Rule 8(a)." Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n.4 (2d Cir. 1990); U.S. v. Lloyds TSB Bank PLC, 639 F. Supp. 2d 326, 336 (S.D.N.Y. 2009) ("Rule 8(a) of the Federal Rules of Civil Procedure governs the sufficientcy of these conspiracy allegations . . . ."); Shpak v. Curtis, No. 10 Civ. 1818 (RRM) (JO), 2011 WL 4460605, at *12 (E.D.N.Y. Sept. 26, 2011); U.S. v. Lloyds TSH Bank PLC, 639 F. Supp. 2d 326, 336 (S.D.N.Y. 2009) ("Rule 8(a) of the Federal Rules of Civil Procedure governs the sufficiency of these conspiracy allegations . . . .").

Safeco also complains that the Second Amended Complaint does not sufficiently allege Mr. Goetsch's participation in the civil conspiracy to defraud. Docket No. 118-1. In the January 6 Order, I held that the allegation that Mr. Goetsch was "approv[ed] all decisions and courses of action for Safeco" satisfied the participation pleading requirement insofar as it alleged that Mr. Goetsch approved that the WTHF-related fraud conspiracy be perpetrated against MES. Docket

---

include 'a statement of facts upon which the belief is founded.'" Id. However, here, I believe that MES's earlier allegations satisfy this requirement by stating that Mr. Goetsch, a Safeco executive and Mr. Pikulin's superior, "was a man who engaged in the details of every case, was a hands on executive, intimately aware of each case and of Safeco's actions and that he insisted on approving all decisions and courses of action for Safeco." Docket No. 111 ¶ 34. MES does not precede that allegation with "upon information and belief," and Safeco does not brief why the Mr. Goetsch allegations, when read together, fall short of Rule 9(b) pleading requirements. Docket No. 118-1 at 39 (discussing the purported inadequacy of the single Mr. Goetsch "upon information and belief" allegation in isolation).

No. 110 (citing Docket No. 109-1 ¶ 34). Safeco does not point to any overlooked facts or law relating to my holding, so I decline to reconsider it.

Next, Safeco asks me to reconsider the January 6 Order's rejection of its argument that intra-corporate conspiracy doctrine bars Count Twelve. Docket No. 118-1. Briefly, intra-corporate conspiracy doctrine requires that MES allege that the conspiracy also involved a third party, and not just a corporation and its agents. See Little v. City of N.Y., 487 F. Supp. 2d 426, 441-42 (S.D.N.Y. 2007) ("Under the intracorporate conspiracy doctrine, the officers, agents, and employees of a single corporate entity, each acting within the scope of her employment, are legally incapable of conspiring together.") (quotation marks & citation omitted). The January 6 Order found that MES sufficiently alleged in the Second Amended Complaint that Perini, a third party, was also part of the alleged conspiracy insofar as MES alleges facts that Perini experienced a financial windfall as a result of MES being shut out of the COE contract completion. Docket No. 110 at 31-32 (Safeco and Perini conspired to squeeze MES out of the deal."); Farbstein v. Hicksville Pub. Library, 254 F. App'x 50 (2d Cir. Nov. 15, 2007) (stating that the plaintiff referenced non-defendant third-party conspirators, but failed to allege a "factual basis supporting a meeting of the minds"). In addition, MES argues that WTHF conspired with Safeco. Docket No. 134. Normally, I would say that Safeco's legal counsel's participation cannot defeat the intracorporate conspiracy doctrine because the legal counsel is Safeco's lawyer, but here, MES alleges that WTHF acted in a manner outside of the permissible scope of its representation of MES when it sought to trick MES into thinking that WTHF in good faith represented Safeco's and MES's interests before the COE. Cf. Farese v. Scherer, 342 F.3d 1223, 1232 (11th Cir. 2003) (holding that "as long as an attorney's conduct falls within the scope of the representation of his client, such conduct is immune from an allegation of a . . . conspiracy");

<u>Heffernan v. Hunter</u>, 189 F.3d 405 (3d Cir. 1999) (holding that when an attorney's conduct falls within the scope of his representation of his client, a conspiracy cannot exist). The scope of WTHF's conduct is a question of fact.

It well may be that there is no merit to MES's claims, but they are sufficiently pleaded. As in the WTHF case, as District Judge Gleeson held, it is more appropriate that these allegations be resolved after some discovery on a dispositive motion, if possible. <u>See</u> <u>Makhoul</u>, No. 11 Civ. 5108, <u>Docket No. 54</u> (transcript of 4/27/2012 oral argument). This is especially true here as the new claims overlap with those claims that have proceeded in discovery already. <u>Id.</u> A discovery conference will be scheduled with this Order to ensure discovery continues apace.

### IV. Conclusion

For the reasons stated above, Safeco's reconsideration motion is **granted in part and denied in part**. I **grant** it to the extent that the January 6 Order's FRCP 15(a)(1) holding granting MES leave to file its Second Amended Complaint as of right is vacated. I **deny** the rest of the motion.

Dated:  Brooklyn, New York
      June 27, 2014

                      *Vera M. Scanlon*
                      VERA M. SCANLON
                United States Magistrate Judge